**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICIA WOODS, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| CELGENE CORPORATION, MARK J. ALLES, RICHARD W. BARKER, HANS BISHOP, MICHAEL W. BONNEY, MICHAEL D. CASEY, CARRIE S. COX, MICHAEL A. FRIEDMAN, JULIA A. HALLER, PATRICIA HEMINGWAY HALL, JAMES J. LOUGHLIN, ERNEST MARIO, and JOHN H. WEILAND, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Patricia Woods ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Celgene Corporation  ("Celgene" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Defendants.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public shareholders of Celgene against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company in to Bristol-Myers Squibb Company ("Bristol-Myers" or "Parent") through its wholly owned subsidiary Burgundy Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On January 3, 2019, Celgene announced that it had entered into a definitive agreement (the "Merger Agreement") with Bristol-Myers, pursuant to which Merger Sub will merge with and into the Company (the "Merger"), with the Company continuing as the surviving corporation and a wholly owned subsidiary of Bristol-Myers.  Pursuant to the terms of the Merger Agreement, upon successful completion of the merger, each Celgene common share issued and outstanding will be converted into the right to receive: (i) $50.00 in cash, without interest, (ii) one share of Bristol-Myers common stock, and (ii) one tradeable contingent value right ("CVR") representing the right to receive $9.00 in cash if a specified set of milestones is achieved, valuing Celgene at $102.43 per share based on the closing price of Bristol-Myers common stock on January 2, 2019 ($52.43 per share) (the "Merger Consideration").  The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Celgene.

3.      The Merger Consideration being offered to shareholders in connection with the Proposed Transaction is fundamentally unfair.  Defendants failed to obtain a collar provision to be included in the Merger Agreement, which would protect the Company's shareholders from a drop in Bristol-Myers' stock price between the Proposed Transaction's announcement and completion.

Bristol-Myers' stock price fell from $52.43 on January 3, 2019, the day of the announcement of the Proposed Transaction, to $45.12 on the following day.

4.      On February 1, 2019, in order to convince Celgene stockholders to vote in favor of the Proposed Transaction, the Board, jointly with Bristol-Myers, authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.[1]

5.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Celgene and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Celgene's stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

---

[1] The Registration Statement was subsequently amended on February 20, 2019.  The amended Registration Statement does not address the disclosure issues detailed herein.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Celgene common stock.

10. Defendant Celgene is a Delaware corporation with its principle executive offices located at 86 Morris Avenue, Summit, New Jersey 07901. The Company's common stock is traded on the NASDQ under the symbol "CELG."

11. Defendant Mark J. Alles ("Alles") is and has been the Company's Chief Executive Officer and Chairman of the Company's Board at all times during the relevant time period.

12. Defendant Richard W. Barker ("Barker") is and has been a member of the Company's Board at all times during the relevant time period.

13. Defendant Hans Bishop ("Bishop") is and has been a member of the Company's Board at all times during the relevant time period.

14. Defendant Michael W. Bonney ("Bonney") is and has been a member of the Company's Board at all times during the relevant time period.

15. Defendant Michael D. Casey ("Casey") is and has been a member of the Company's Board at all times during the relevant time period.

16. Defendant Carrie S. Cox ("Cox") is and has been a member of the Company's Board at all times during the relevant time period.

17. Defendant Michael A. Friedman ("Friedman") is and has been a member of the Company's Board at all times during the relevant time period.

18.     Defendant Julia A. Haller ("Haller") is and has been a member of the Company's Board at all times during the relevant time period.

19.     Defendant Patricia Hemingway Hall ("Hall") is and has been a member of the Company's Board at all times during the relevant time period.

20.     Defendant James J. Loughlin ("Loughlin") is and has been a member of the Company's Board at all times during the relevant time period.

21.     Defendant Ernest Mario ("Mario") is and has been a member of the Company's Board at all times during the relevant time period.

22.     Defendant John H. Weiland ("Weiland") is and has been a member of the Company's Board at all times during the relevant time period.

23.     Defendants Alles, Barker, Bishop, Bonney, Casey, Cox, Friedman, Haller, Hall, Loughlin, Mario, and Weiland are collectively referred to herein as the "Individual Defendants."

24.     Defendant Celgene, along with the Individual Defendants, are collectively referred to herein as "Defendants."

**CLASS ACTION ALLEGATIONS**

25.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Celgene (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

26.     This action is properly maintainable as a class action for the following reasons:

a.     The Class is so numerous that joinder of all members is impracticable. As of December 31, 2018, there were approximately 700,238,758 common shares of Celgene outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.      Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Registration Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Registration Statement as currently composed.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.      A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

27.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

28.     Celgene, a Delaware corporation, is a biotechnology company that discovers, develops and commercializes medicines for cancer and inflammatory disorders.  The Company's major product is Revlimid (lenalidomide), in combination with dexamethasone for the treatment of multiple myeloma patients.

### The Company Announces the Proposed Transaction

29.     On January 3, 2019, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

> NEW YORK & SUMMIT, N.J.,--(BUSINESS WIRE)--Bristol-Myers Squibb Company (NYSE:BMY) and Celgene Corporation (NASDAQ:CELG) today announced that they have entered into a definitive merger agreement under which Bristol-Myers Squibb will acquire Celgene in a cash and stock transaction with an equity value of approximately $74 billion. Under the terms of the agreement, Celgene shareholders will receive 1.0 Bristol-Myers Squibb share and $50.00 in cash for each share of Celgene. Celgene shareholders will also receive one tradeable Contingent Value Right (CVR) for each share of Celgene, which will entitle the holder to receive a payment for the achievement of future regulatory milestones. The Boards of Directors of both companies have approved the combination.
>
> The transaction will create a leading focused specialty biopharma company well positioned to address the needs of patients with cancer, inflammatory and immunologic disease and cardiovascular disease through high-value innovative medicines and leading scientific capabilities. With complementary areas of focus, the combined company will operate with global reach and scale, maintaining the speed and agility that is core to each company's strategic approach.
>
> Based on the closing price of Bristol-Myers Squibb stock of $52.43 on January 2, 2019, the cash and stock consideration to be received by Celgene shareholders at closing is valued at $102.43 per Celgene share and one CVR (as described below). When completed, Bristol-Myers Squibb shareholders are expected to own approximately 69 percent of the company, and Celgene shareholders are expected to own approximately 31 percent.
>
> "Together with Celgene, we are creating an innovative biopharma leader, with leading franchises and a deep and broad pipeline that will drive sustainable growth and deliver new options for patients across a range of serious diseases," said Giovanni Caforio, M.D., Chairman and Chief Executive Officer of Bristol-Myers Squibb. "As a combined entity, we will enhance our leadership positions across our

portfolio, including in cancer and immunology and inflammation. We will also benefit from an expanded early- and late-stage pipeline that includes six expected near-term product launches. Together, our pipeline holds significant promise for patients, allowing us to accelerate new options through a broader range of cutting-edge technologies and discovery platforms."

Dr. Caforio continued, "We are impressed by what Celgene has accomplished for patients, and we look forward to welcoming Celgene employees to Bristol-Myers Squibb. Our new company will continue the strong patient focus that is core to both companies' missions, creating a shared organization with a goal of discovering, developing and delivering innovative medicines for patients with serious diseases. We are confident we will drive value for shareholders and create opportunities for employees."

"For more than 30 years, Celgene's commitment to leading innovation has allowed us to deliver life-changing treatments to patients in areas of high unmet need. Combining with Bristol-Myers Squibb, we are delivering immediate and substantial value to Celgene shareholders and providing them meaningful participation in the long-term growth opportunities created by the combined company," said Mark Alles, Chairman and Chief Executive Officer of Celgene. "Our employees should be incredibly proud of what we have accomplished together and excited for the opportunities ahead of us as we join with Bristol-Myers Squibb, where we can further advance our mission for patients. We look forward to working with the Bristol-Myers Squibb team as we bring our two companies together."

\*       \*       \*

**Terms and Financing**

Based on the closing price of Bristol-Myers Squibb stock on January 2, 2019, the cash and stock consideration to be received by Celgene shareholders is valued at $102.43 per share. The cash and stock consideration represents an approximately 51 percent premium to Celgene shareholders based on the 30-day volume weighted average closing stock price of Celgene prior to signing and an approximately 54 percent premium to Celgene shareholders based on the closing stock price of Celgene on January 2, 2019. Each share also will receive one tradeable CVR, which will entitle its holder to receive a one-time potential payment of $9.00 in cash upon FDA approval of all three of ozanimod (by December 31, 2020), liso-cel (JCAR017) (by December 31, 2020) and bb2121 (by March 31, 2021), in each case for a specified indication.

The transaction is not subject to a financing condition. The cash portion will be funded through a combination of cash on hand and debt financing. Bristol-Myers Squibb has obtained fully committed debt financing from Morgan Stanley Senior Funding, Inc. and MUFG Bank, Ltd. Following the close of the transaction, Bristol-Myers Squibb expects that substantially all of the debt of the combined company will be pari passu.

\*       \*       \*

**Advisors**

Morgan Stanley & Co. LLC is serving as lead financial advisor to Bristol-Myers Squibb, and Evercore and Dyal Co. LLC are serving as financial advisors to Bristol-Myers Squibb. Kirkland & Ellis LLP is serving as Bristol-Myers Squibb's legal counsel. J.P. Morgan Securities LLC is serving as lead financial advisor and Citi is acting as financial advisor to Celgene. Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Celgene.

## The Proposed Transaction is Unfair to Shareholders

30.    The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

31.    First, the Company failed to negotiate an exchange ratio collar provision which would protect its shareholders in the event of a decline of Bristol-Myers' common stock.  Indeed, Bristol-Myers' stock price fell from $52.43 on January 3, 2019, the day of the announcement of the Proposed Transaction, to $45.12 on the following day.

32.    Moreover, when entering into the Merger Agreement, the Company's Board agreed to preclusive deal protection devices that ensure that no competing offers for Celgene will be forthcoming.

33.    Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers; (ii) an information rights provision that requires the Company to keep Bristol-Myers informed of the status and material terms of any proposals or offers received concerning a bona fide acquisition proposal; (iii) a matching rights provisions allowing Bristol-Myers four business days to match any unsolicited superior acquisition proposal for the Company; and (iv) a provision that requires the Company to pay Bristol-Myers a termination fee of $2.2 billion if the Company terminates the Proposed Transaction under specified circumstances.

34.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Celgene.  Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

**Compensation to the Company's
Officers and Directors Resulting From the Proposed Transaction**

35.     Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Transaction.

36.     Among other things, each of Celgene's executive officer is eligible to participate in Celgene's Executive Severance Plan (the "ESP"), and is eligible to receive the following severance benefits upon a change in control termination, subject to the executive officer's execution and non-revocation of a release and termination agreement: (i) a cash severance payment equal to (x) 2.5 (or 3, in the case of the Chief Executive Officer) multiplied by (y) the sum of the executive officer's annual base salary and target annual cash incentive opportunity, (ii) COBRA continuation coverage at active employee rates for a benefits continuation period of up to 30 months (or 36 months, in the case of the Chief Executive Officer), (iii) 18 months of outplacement services, (iv) a prorated annual incentive compensation award for the year of termination based on the greater of assumed achievement of the applicable performance goals at the target level and the actual level of achievement of the applicable performance goals through the termination date, and (v) full accelerated vesting of all outstanding equity awards granted under Celgene's equity plans.

37.     The following table, extracted from the Registration Statement, shows the possible payouts to the Company's officers and directors as a result of their exchange of shares of Celgene for the Merger Consideration:

| Named Executive Officer (1) | Cash ($) (2) | Equity ($) (3) | Perquisites / Benefits ($) (4) | Tax Reimbursement ($) | Total ($) |
|---|---|---|---|---|---|
| Mark J. Alles | 10,411,397 | 17,321,068 | 159,200 | 0 | 27,891,665 |
| David V. Elkins | 3,992,613 | 8,044,450 | 137,600 | 2,938,139 | 15,112,802 |
| Peter N. Kellogg | 4,440,323 | 7,340,651 | 137,600 | 0 | 11,918,574 |
| S.J. Rupert Vessey | 3,909,714 | 5,441,003 | 137,600 | 2,706,719 | 12,195,036 |

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

38.     On February 1, 2019, the Company authorized the filing of the Registration Statement by Bristol-Myers with the SEC.  The Registration Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

39.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Management's Financial Projections

40.     The Registration Statement contains financial projections prepared by Celgene and Bristol-Myers' senior management in connection with the Proposed Transaction, but fails to provide material information concerning such.

41.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2]

---

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24,

Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

42.     In order to make management's financial projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

43.     With respect to Celgene's Financial Projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including (i) EBITDA; (ii) Adjusted EBITDA; (iii) Unlevered Free Cash Flows; and (iv) Revenue.

44.     With respect to the Bristol-Myers' Financial Projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including (i) EBITDA; (ii) Unlevered Free Cash Flow; and (iii) Revenue.

45.     Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

---

2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[3] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding J.P. Morgan's Financial Opinion**

46.     The Registration Statement contains the financial analyses and opinion of J.P
Morgan Securities LLC ("J.P. Morgan") concerning the Proposed Transaction, but fails to provide
material information concerning such.

47.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company,
the Registration Statement fails to disclose: (i) the line items to calculate unlevered free cash flows;
(ii) the range of terminal values for the Company; (iii) the basis for discount rates ranging from
8.50% to 9.50%; and (iv) the basis for terminal growth rate ranging from 1.50% to 3.00%.

48.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for Bristol-Myers,
the Registration Statement fails to disclose: (i) the line items to calculate unlevered free cash flows;
(ii) the range of terminal values for Bristol-Myers; (iii) the basis for using a range of discount rates
from 7.25% to 8.25%; and (iv) the basis for a terminal growth rate ranging from 0.50% to 1.50%.

49.     With respect to J.P. Morgan's *Analyst Price Target* analyses, the Registration
statement fails to disclose which analysts' price targets were observed in J.P. Morgan's analysis.

50.     With respect to J.P. Morgan's *Intrinsic Value Creation Analysis*, the Registration
Statement fails to disclose: (i) the basis for applying a 9.0% discount rate; and (ii) the basis for
using a 0.0% terminal growth rate.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Citigroup's Financial Opinion**

51.     The Registration Statement contains the financial analyses and opinion of Citigroup
Global Markets Inc. ("Citigroup") concerning the Proposed Transaction, but fails to provide
material information concerning such.

52.     With respect to Citigroup's *Discounted Cash Flow Analysis* for the Company, the
Registration Statement fails to disclose: (i) the line items to calculate unlevered free cash flows

(ii) the range of terminal values for the Company; and (iii) the basis for using discount rates ranging from 8.3% to 9.5%; and (iv) the basis for using terminal growth rates ranging from 1.50% to 3.00%.

53.     With respect to Citigroup's *Discounted Cash Flow Analysis* for Bristol-Myers, the Registration Statement fails to disclose: (i) the line items to calculate unlevered free cash flows; (ii) the range of terminal values for Bristol-Myers; (iii) the basis for using a range of discount rates from 7.9% to 9.2%; and (iv) the basis for a terminal growth rate ranging from 0.50% to 1.50%.

54.     With respect to Citigroup's *Analyst Price Target* analyses, the Registration Statement fails to disclose which analysts' price targets were observed in Citigroup's analysis.

55.     With respect to Citigroup's *Intrinsic Value Creation Analysis*, the Registration Statement fails to disclose: (i) the basis for using a 9.0% discount rate and a 2.25% termination growth rate for Celgene's common stock; (ii) the basis for using a 7.75% discount rate and a 1.0% terminal growth rate for Bristol-Myers' common stock; and (iii) the basis for using a 9.0% discount rate and a 0.0% terminal growth rate for the estimated present value of the Celgene projected synergies.

56.     With respect to Citigroup's *Implied Premia Paid* analysis, the Registration Statement fails to disclose: (i) the selected acquisition transactions observed by Citigroup in its analysis; and (ii) the implied premia paid in each transaction observed.

57.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its

fairness opinion.

58.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material Misrepresentations**
**or Omissions Regarding the Financial Opinion of Bristol Myers' Financial Advisors**

59.     The Registration Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC, Evercore Group L.L.C., and Dyal Co. LLC (the "Bristol-Myers Advisors") in connection with the Proposed Transaction.

60.     With respect to the Bristol-Myers Advisors' *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) unlevered free cash flows and the line items used for calculation; (ii) the basis for using discount rates ranging from 7.5% to 9.0%; (iii) projected terminal values for the companies; (iv) the basis for using a perpetuity growth rate ranging from 0.50% to 2.0% applied to arrive at the terminal values; and (v) the basis for a mid-point perpetual growth rate of 1.25%.

61.     With respect to the Bristol-Myers Advisors' *Discounted Cash Flow Analysis* for Bristol-Myers, the Registration Statement fails to disclose: (i) unlevered free cash flow and the line items used for calculation; (ii) projected terminal values for the companies; (iii) the basis for using discount rates ranging from 7.5% to 8.5%, and (iv) the basis for using a perpetuity growth rate ranging from (1.0)% to 0.0% applied to arrive at the terminal values.

62.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material Misrepresentations
or Omissions Regarding Conflicts of Interests Surrounding the Proposed Transaction**

63.     The Registration Statement does not disclose material information concerning communication of future employment and Board membership of the Company's executives and directors.  Specifically, the Registration Statement does not disclose the timing and nature of such communications, nor does it disclose participants in such communications.

64.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for the Company's shareholders to understand potential conflicts of interest of management and the Board, as that information reflects upon possible motivations that would prevent the Company's executives or directors from acting in the best interests of the Company's stockholders.

65.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

66.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

68.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

69.     The Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

70.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

71.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

72.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

73.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

74.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

75.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

76.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Celgene within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Celgene, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

78.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

80.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

81.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

82.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

83.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 20, 2019                    Respectfully submitted,


                                            By: */s/ Joshua M. Lifshitz*
                                            Joshua M. Lifshitz
                                            Email: jml@jlclasslaw.com
                                            **LIFSHITZ & MILLER LLP**
                                            821 Franklin Avenue, Suite 209
                                            Garden City, New York 11530
                                            Telephone: (516) 493-9780
                                            Facsimile: (516) 280-7376

                                            *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Patricia Woods, hereby certify that:

1. Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in self securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5. I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 02/18/2019

Signature

**Exhibit A**

My transactions in Celgene Corporation (CELG) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|----------|------|------|----------|------------------|-----------------|
| CELG | 07/14/2006 | | P | 42 | $24.0976 |